# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 23-10278-357 |
| JC FARMS, LLC, | Chapter 12 |
| Debtor. | Related to Doc. 133 |

## MEMORANDUM OPINION

Creditor Baker Implement Company has filed a Motion to Allow Late Filed Claim (Doc. 133) (the "Motion") in this Chapter 12 case. Baker seeks to file an untimely claim in the amount of $56,500 arising from the sale of a Great Plains drill planter to Debtor JC Farms, LLC, which never paid for the drill. The parties agree that the Debtor did not schedule its debt to Baker, nor did it list Baker on the creditor matrix. As a result, Baker did not receive formal notice of the deadline to file proofs of claim. Nevertheless, the Debtor contends that this omission is immaterial, because Baker had actual knowledge of this bankruptcy case and would not have filed a timely claim in any event. For the following reasons, I disagree, and I will grant the Motion.

### I.   Factual and Procedural Background

The Debtor commenced this Chapter 12 case on June 20, 2023 by filing a voluntary petition, as well as the required schedules and statements. The Debtor listed the drill as an asset on its Schedule A/B. Two days later, the Court issued an Order and Notice of Chapter 12 Bankruptcy Case, notifying parties listed on the creditor matrix that the deadline to file proofs of claim was August 29, 2023. Baker was not listed on the matrix, and therefore it did not receive formal notice of the bar date.

On January 18, 2024, the Debtor filed an expedited motion to sell certain equipment, including the drill, at an impending public auction. The equipment had been brought to the auction location pending court approval of the sale. However, at the hearing on the motion, the Debtor's counsel announced, without explanation, that the Debtor no longer wished to sell the drill. I granted the motion, authorizing the sale of the other equipment.

More clarity as to the status of the drill was provided at the plan confirmation hearing in February. At that hearing, the Debtor's counsel explained that he had recently learned that the Debtor never paid Baker for the drill, and Baker had re-taken possession of the drill while it was at the auction site. I confirmed the Debtor's reorganization plan, but I clarified in the confirmation order that should Baker hold an allowed claim regarding the drill, that claim would be paid in full over the course of five years, along with the claims of other unsecured creditors. The Debtor also retained the right to object to any proof of claim filed by Baker, as well as to pursue its legal rights against Baker regarding its repossession of the drill.

Approximately one week later, and almost six months after the claims bar date, Baker filed a proof of claim and the instant Motion. The Debtor filed a response in opposition, arguing that Baker had actual knowledge of this bankruptcy case and thus should not be permitted to file an untimely claim.

The parties submitted additional briefing, and I held a hearing on June 3, 2024. The evidence presented at the hearing established that the parties agree as to three important facts.

First, Baker did not receive formal notice of the bar date, because the Debtor did not list Baker's claim on its schedules or include Baker on the matrix.

Second, neither Baker nor the Debtor realized that a claim existed until after the bar date had passed. David Williams, a vice president of Baker, and the Debtor's principal, Nick Gates, discussed the sale of the drill over the phone in late 2020. But the companies never executed a sale contract. Williams took an unexpected leave of absence from work in March 2021, and the Debtor took possession of the drill shortly thereafter. As a result of Williams's absence, Baker never sent an invoice to the Debtor. It was not until an audit in January 2024 that Williams discovered that Baker had not received payment for the drill. As for the Debtor, its office manager, Tamra Martin, discovered that the drill was in the Debtor's possession following an inventory audit in December 2021. But because there was no invoice or agreement documenting the sale, she did not know that the Debtor had not paid for the drill.[1]

---

[1] Martin testified that she reached out to Baker, probably in early 2022, and requested a copy of the parties' contract. But she did not explain what response she received. This testimony suggests that the parties probably *should have* figured out that the Debtor owed Baker the purchase price of the drill long before the commencement of this case. But I will nevertheless decide the dispute on the basis of the parties' agreement that they did not.

Third, the parties agree that the drill has since been returned to the Debtor and sold at a different auction. The proceeds of the sale were paid to one of the Debtor's secured creditors on account of its blanket lien on equipment.

The parties have two main disputes. First, they disagree as to whether Baker had actual knowledge of this bankruptcy case sufficiently early to allow it to discover the bar date and to file a timely claim. In particular, the Debtor argues that Baker had actual knowledge of the case through its employees. In support of this argument, the Debtor introduced into evidence text messages between Martin and Doug Willard, a manager at Baker's branch in Piggot, Arkansas. The texts appear to establish that Willard was aware of the bankruptcy case, and that others in the organization were as well, at least by August 30, 2023.

Second, the parties disagree as to whether Baker's lack of formal notice was harmless error. As described above, Baker failed to appreciate that it held a claim until January 2024, months after the bar date. Accordingly, Williams speculated at the hearing that even if he had received timely notice of the deadline to file proofs of claim, Baker would not have filed one. Accordingly, the Debtor's counsel argues that the failure to give formal notice was inconsequential.

## II.     Analysis

Generally, a creditor in a Chapter 12 case must file a proof of claim to participate in distributions under a plan of reorganization. *See* Fed. R. Bankr. P. 3002(a); 11 U.S.C. §§ 501(a), 502(a). "A proof of claim is a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). In Chapter 12, proofs of claim are due 70 days after the petition date. *See* Fed. R. Bankr. P. 3002(c). Claims filed after this deadline are not allowed, and accordingly, a creditor cannot share in any distributions under the plan. *See* 11 U.S.C. § 502(b)(9).

There are several exceptions to this deadline under Rule 3002(c). Subparagraph (c)(6) provides that, on a creditor's motion, a court may extend the time to file a proof of claim for up to 60 days from the date of the order granting the motion.[2] *See* Fed. R. Bankr. P. 3002(c)(6).

---

[2] Although the parties initially asserted that the "excusable neglect" standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) governed this dispute, they acknowledged in subsequent briefing and at the hearing that Rule 3002(c) governs the filing of untimely claims in a Chapter 12 case. *See Jones v. Arross*, 9 F.3d 79, 81 (10th Cir. 1993); *In re Boudinot*, 237 B.R. 413, 417 (Bankr. S.D. Ohio 1999); *In re Moore*, No. 19-01228, 2021 WL 4823523, at *3 (Bankr. N.D. Iowa Oct. 14, 2021).

The deadline can be extended "if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim." *Id.* The creditor has the burden to demonstrate the insufficiency of the notice. *See In re Somerville*, 605 B.R. 700, 707 n.10 (Bankr. D. Md. 2019); *In re Mazik*, 592 B.R. 812, 818 (Bankr. E.D. Pa. 2018).

### A.   "The Notice" Under Rule 3002(c)(6)

"It is a settled principle that unless there is some ambiguity in the language of a Bankruptcy Rule, a court's analysis must end with the Rule's plain meaning." *In re Klesalek*, 307 B.R. 648, 652 (B.A.P. 8th Cir. 2004). Accordingly, I must assess whether "the notice" given to Baker "was insufficient under the circumstances." Fed. R. Bankr. P. 3002(c)(6). Although the use of the definite article "the" in Rule 3002(c)(6) suggests that it is referring to a particular notice, "the notice" has no antecedent within the rule. "The notice" could mean notice derived from a creditor's actual knowledge of the bankruptcy case, *see In re Dillon*, 619 B.R. 357, 363 (Bankr. S.D. Miss. 2020), or it could mean formal notice of the bar date issued by the court or served by the debtor's counsel. *See In re Sanomedics, Inc.*, 655 B.R. 502, 506 (Bankr. S.D. Fla. 2023).

Because the rule is "capable of being understood in two or more possible senses or ways," it is ambiguous. *See United States v. E.T.H.*, 833 F.3d 931, 937 (8th Cir. 2016) (cleaned up); *see also In re McKinnis*, 287 B.R. 245, 254 (Bankr. E.D. Mo. 2002). Accordingly, I may resort to the history of the rule to ascertain the meaning of "the notice." *See Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 511 (1989).

The predecessor of subparagraph (c)(6) was added to Rule 3002 in December 2008. Following that amendment, the rule stated as follows:

> If *notice of the time to file a proof of claim* has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that *the notice* was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

Fed. R. Bankr. P. 3002(c)(6) (2009) (emphasis added). Accordingly, that version of Rule 3002(c)(6) made clear that the relevant notice was the "notice of the time to file a proof of claim." *Id.*

The rule was amended in 2017. According to the Advisory Committee's notes, subparagraph (c)(6) was altered "to expand the exception to the bar date for cases in which a creditor received insufficient *notice of the time to file a poof of claim*." Fed. R. Bankr. P. 3002

advisory committee's note to 2017 amendment (emphasis added). Despite this clear explanation in the notes, the drafters dropped the italicized language from the rule itself. *See* Fed. R. Bankr. P. 3002(c)(6) (2018). The amended rule included the phrase "the notice" in two places, but without an obvious antecedent. *See* Fed. R. Bankr. P. 3002(c)(6)(A) ("the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a)"), 3002(c)(6)(B) ("the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim, and the notice was mailed to the creditor at a foreign address") (2018).

Of course, when an amendment removes language from a statute or rule, a court normally treats the change as significant. *See, e.g.*, *Lamie v. United States Trustee*, 540 U.S. 526, 538-39 (2004) (concluding that the deletion of "the debtor's attorney" in amendment to 11 U.S.C. § 330 prohibited debtors' attorneys from receiving compensation from estate funds). But there is no reason to think that the 2017 amendment altered the meaning of "the notice" from what it signified previously. Indeed, the exceptions enumerated in the 2017 amendment contemplate that certain creditors will not receive timely notice of the bar date because of practical realities. Although the court is obligated to send notice of the deadline to file proofs of claim, *see* Fed. R. Bankr. P. 2002(f)(3), a creditor with a foreign address may not receive the notice in time to act because of delays in transit. *See* Fed. R. Bankr. P. 3002(c)(6)(B) (2018). Or a creditor may not receive timely notice of the bar date because a debtor does not timely file the creditor matrix, which the court uses to determine which parties should receive notice. *See* Fed. R. Bankr. P. 3002(c)(6)(A) (2018); Fed. R. Bankr. P. 1007(a) (2018). In short, although the 2017 amendment removed the phrase "notice of the time to file a proof of claim" from the rule, the nature of the exceptions makes clear that the otherwise unexplained phrase "the notice" must have continued to refer to notice of the bar date.

Rule 3002(c)(6) was amended again in 2022 to its current form.[3] This amendment broadened the application of the subparagraph so that it no longer matters why "the notice was insufficient." Fed. R. Bankr. P. 3002(c)(6) (2023). Nevertheless, relief still hinges on the

---

[3] The 2017 amendment to Rule 3002(c)(6) did not adequately address what should happen when a debtor files a timely matrix but simply omits a creditor from it. *Compare Somerville*, 605 B.R. at 707-08, *with Mazik*, 592 B.R. at 818. This confusion led to the most recent amendment. *See* Fed. R. Bankr. P. 3002(c)(6) (2023); *In re Bauer*, No. 21-32089, 2024 WL 1354607, at *11 n.5 (Bankr. N.D. Ohio Mar. 29, 2024). The amendment also sought "to provide a single standard," regardless of "whether the creditor has a domestic address or a foreign address." Fed. R. Bankr. P. 3002 advisory committee's note to 2022 amendment.

sufficiency of "the notice." Given this language and the rule's history, I have no reason to think that "the notice" refers to anything other than the notice of the bar date.[4]

Accordingly, I conclude that "the notice" for purposes of Rule 3002(c)(6) means notice of the deadline to file proofs of claim.

### B.   Baker's Actual Knowledge of the Bankruptcy Case

Although Baker did not receive notice of the deadline to file proofs of claim, the Debtor argues that Baker should not be permitted to file a claim out of time because Baker, through its agents, had actual knowledge of the bankruptcy case in time to file a timely proof of claim.

The text messages between Martin and Willard appear to establish that Willard was aware of the bankruptcy case. Although those texts are dated August 30, 2023, one day after the bar date, I infer from their content and context that some representatives of Baker were aware of this case at some point prior to that date. It is not always appropriate to impute an employee's knowledge to the employer. *Compare In re Helios & Matheson Analytics, Inc.*, 629 B.R. 772, 781 (Bankr. S.D.N.Y. 2021) (declining to impute employees' knowledge of bankruptcy case to employer), *with Dillon*, 619 B.R. at 361 (imputing actual knowledge of bankruptcy case by attorney to client-creditor). But for purposes of this dispute, I will assume that an employee of Baker with an appropriate level of responsibility was aware of this bankruptcy case in sufficient time to discover the bar date and to file a proof of claim before it passed.

Nevertheless, I conclude that this knowledge is immaterial. The Federal Rules of Bankruptcy Procedure must be interpreted together with the Bankruptcy Code. *See In re Friesenhahn*, 169 B.R. 615, 629 (Bankr. W.D. Tex. 1994) ("The Bankruptcy Code and the Rules must be harmonized unless it is impossible to do so."); *In re TBR USA, Inc.*, 429 B.R. 599, 614 n.19 (Bankr. N.D. Ind. 2010) (interpreting the Code and federal rules as one framework). Certain Code provisions that concern the timeliness of claims expressly address a creditor's actual knowledge of a case. Section 523(a)(3) excepts from discharge debts "neither listed nor scheduled" in time for a creditor to file a proof of claim, "unless such creditor had notice *or actual knowledge* of the case." 11 U.S.C. § 523(a)(3) (emphasis added). Similarly, Section 726(a)(2)(C) permits tardily filed claims to be paid along with timely claims

---

[4] The parties agree that Baker did not receive notice of the bar date, either through the Notice of Chapter 12 Bankruptcy Case issued by the Court or otherwise. Therefore, I do not address whether indirect notice of the bar date, such as by mail forwarded from a predecessor in interest or publication notice, would preclude a creditor from obtaining an extension under Rule 3002(c)(6).

if the creditor "did not have notice *or actual knowledge* of the case." 11 U.S.C. § 726(a)(2)(C) (emphasis added).[5] But this language is notably absent from Rule 3002(c)(6). Under the negative-pregnant canon of interpretation, this omission is significant. *See McKinnis*, 287 B.R. at 254; *In re Nockerts*, 357 B.R. 497, 503 (Bankr. E.D. Wis. 2006).

Read together, Sections 523(a)(3) and 726(a)(2)(C) and Rule 3002(c)(6) balance a creditor's right to participate in a bankruptcy case against a debtor's fresh start. A creditor with neither notice of the bar date nor knowledge of the case has several options, including to pursue the debtor for full payment or to participate in distributions to creditors upon learning of the case.[6] But a creditor that is aware of a pending bankruptcy case early enough to file a timely claim, but fails to investigate or otherwise to protect its interests, cannot take advantage of the ultimate form of relief—an exception from discharge. A creditor in this situation must either seek relief under Rule 3002(c)(6) or recover nothing at all. Although we may recognize in retrospect that the debtor should have prepared its filings more carefully and the creditor should have received notice of the bar date, principles of finality and a debtor's fresh start limit the relief available to the creditor. *See Local Loan v. Hunt*, 292 U.S. 234, 244 (1934).

I thus reject the Debtor's argument that Baker's actual knowledge of this bankruptcy case precludes the relief it seeks here.

### C. Harmless Error

As noted, the Debtor argues that its failure to provide notice to Baker was immaterial because Baker would not have filed a timely claim in any event. I disagree, for two reasons.

---

[5] At the hearing, Baker's counsel argued that the best-interests-of-creditors test in Section 1225(a)(4) and the waterfall of Section 726 support allowance of the claim. In other words, because a late-filed claim would be paid in a Chapter 7 case of a solvent debtor, even if the creditor had knowledge of the case, Baker should be paid in this Chapter 12 case as well. *See* 11 U.S.C. § 726(a)(3). I disagree. *See In re Tribune Co.*, 506 B.R. 613, 617-18 (Bankr. D. Del. 2013) (concluding that Section 726(a) does not apply in Chapter 11 through the best-interests-of-creditors test); 6 *Collier on Bankruptcy* ¶ 726.01 (16th ed. 2024) ("[A] tardily filed claim would not be considered in the best interests test in chapter 12 or chapter 13, because that claim would be disallowed under section 502(b)(9) and therefore would not be an allowed unsecured claim.").

[6] Of course, Section 523(a)(3) does not apply in all cases. *See* 11 U.S.C. § 1141(d)(2); *In re Baskowitz*, 194 B.R. 839, 845 (Bankr. E.D. Mo. 1996) (no-asset Chapter 7 cases).

First, it is far from clear that the failure to give notice of the bar date may be disregarded as harmless error. Principles of harmless error generally apply in bankruptcy proceedings, and they may excuse some noticing problems. *See* Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61; *In re New Concept Housing, Inc.*, 951 F.2d 932, 937-38 (8th Cir. 1991). But discharging the claim of a creditor that does not have notice of the bar date raises questions of due process. *See, e.g.*, *In re Hairopoulos*, 118 F.3d 1240, 1244-45 (8th Cir. 1997). And a violation of due process is not harmless error. *See New Concept*, 951 F.2d at 937 n.7.

Second, a harmless-error conclusion requires a relatively clear picture of what would have occurred in the alternative scenario in which the creditor received proper notice. *See Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 738 (8th Cir. 2008) (rejecting harmless-error argument because "this court cannot determine whether the bankruptcy court would have denied the motion"). That does not exist here. To be sure, Williams testified rather definitively that Baker would not have filed a claim even if it had received notice of the bar date. But his testimony did not address other relevant, though hypothetical, facts and circumstances. For example, if the Debtor had included Baker on the matrix, thus prompting the Court to send Baker notice of the bar date, it also is likely that the Debtor would have listed its $56,500 debt to Baker on Schedule E/F. If Baker had investigated after receiving a notice—something that the Debtor suggests that a creditor ought to do if it has mere knowledge of a bankruptcy case—it would have observed both the debt on Schedule E/F and the drill on Schedule A/B. That information likely would have led Baker to understand the situation, or at least to ask the Debtor for more information. Nor is it clear from the testimony that the notice would have come to Williams's attention or that he would have been the person who decided whether Baker should take action in response to it. For these reasons, his testimony on this point is entitled to little weight.

As the party advancing an exception to an otherwise applicable rule—effectively an affirmative defense to its failure to ensure proper notice to creditors—the Debtor bears the burden of proof on its harmless-error theory. *See generally In re Moeder*, 220 B.R. 52, 56 (B.A.P. 8th Cir. 1998). The equities of the situation compel the same conclusion. If the Debtor is to obtain the value of the drill without paying Baker for it, particularly when all other creditors are being paid in full, the Debtor should be required to demonstrate that the failure to give notice to Baker was of no moment. I do not believe that the record establishes that the Debtor's noticing defect "did not affect any party's substantial rights" and therefore should be disregarded. Fed. R. Civ. P. 61 (cleaned up). Accordingly, I would reject the Debtor's harmless-error defense even if I agreed that such a defense were permissible in this context.

### D. Discretion

Finally, Rule 3002(c)(6) is discretionary. *See* Fed. R. Bank. P. 3002(c)(6) (providing that "[t]he motion may be granted"). Of course, there may be situations in which it is appropriate to deny a motion to file an untimely claim, such as when doing so would significantly prejudice a debtor or other creditors. But no such circumstances exist in this case. The Debtor's Chapter 12 plan was confirmed only a few months ago, and it proposes to pay all allowed claims in full. Accordingly, I see no reason why the Motion should not be granted.

## III. Conclusion

For these reasons, I conclude that the notice to Baker of the time to file a proof of claim was insufficient under the circumstances pursuant to Rule 3002(c)(6). I will enter a separate order granting the Motion.

Dated: July 9, 2024
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Copies to:

**JC Farms, LLC**
18103 US Hwy 412
Kennett, MO 63857-8313

**Kelvin W Birk**
Birk Law Firm, LC
2851 Professional Court
Suite C
Cape Girardeau, MO 63703

**Charles W. Riske**
13321 N Outer 40 Road Suite 600
Town and Country, MO 63017

**Erica Dawn Koetting**
O'Loughlin, O'Loughlin & Koetting
1736 North Kingshighway
Cape Girardeau, MO 63701

**Office of US Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102

**Sirena T Wilson**
Office of U.S. Trustee
111 South 10th Street
Suite 6.353
St. Louis, MO 63102

**Baker Implement Company**
c/o Seth A. Albin
Summers Compton Wells LLC
903 S. Lindbergh Blvd., Suite 200
Saint Louis, MO 63131

**Seth A. Albin**
Summers Compton Wells, LLC
903 S. Lindbergh Blvd.
Suite 200
St. Louis, MO 63131